STATE OF TEXAS V. NATIONAL BANK OF CLEBURNE ET AL.

No. 4540.     Decided December 1, 1926.
(288 S. W., 435).

**1.—Bankruptcy—Discharge—Debts Scheduled—Notice to Creditor.**

The obligations of a bankrupt to the State as surety on the bond of a county depository bank and on that of a county tax collector for State taxes deposited or collected were provable debts from which he was released by his discharge if the same were duly scheduled as such by him in the bankruptcy proceedings, or, if not so duly scheduled, still the State had notice or actual knowledge of the bankruptcy proceedings affecting them. (P. 218).

**2.—Same—Schedule of Surety Obligations.**

See schedules by a bankrupt of his debt to a county as surety for a bank as the county depository of State funds and of his debt to the State for taxes collected as surety on the bond of the county tax collector payable to the Governor, which are held to have been properly scheduled as debts of the bankrupt, and therefore released by his discharge.     (P. 218).

**3.—Same—Notice to State.**

The State's officers, having notice of the bankruptcy proceedings, were put on inquiry thereby as to all facts in regard to his indebtedness to the State which an examination of the proceedings would have disclosed, with opportunity to present their claims and participate in the distribution. The State was therefore bound by the discharge irrespective of irregularity in the scheduling by the bankrupt of its claims against him. (Pp. 218-220).

Questions certified to the Supreme Court by the Court of Civil Appeals for the Second District, in an appeal from Johnson County.

The Supreme Court referred the questions certified to the Commission of Appeals, Section A, for their opinion thereon and adopt and certify same as its answer to the questions.

*Dan Moody*, Attorney General, and *Jno. W. Goodwin,* and *G. W. Truehart,* Assistants, for appellant.

The burden of proof was on Floore to show that plaintiff's claim was duly scheduled and that it had notice or actual knowledge of his bankruptcy proceedings. Fields v. Rust, 82 S. W., 331; Santa Rosa Bank v. White, 73 Pac., 577; Bila v. Erbanzyk, 85 S. W., 451; Slone v. Grollman, 77 Atl., 577; Collins v. Crole, 59 S. E., 727.

A claim to be properly scheduled should give the name and address of the creditor and the amount and consideration of the claim. Vol. 1, Federal Statutes, Ann., 612, and notes.

Where a claim is not properly scheduled the burden of proof is on the bankrupt to show that the creditor had knowledge of the bankruptcy proceedings. Slone v. Grollman, 77 Atl., 577; Armstrong v. Sweeney, 103 N. W., 436; Wineman v. Fisher, 98 N. W., 404.

*Walker & Baker,* for appellee.

The fact that Johnson County may not have had any beneficial interest in the particular debt involved would not militate against its right to file the claim. City of San Antonio v. Reed, 192 S. W., 549.

Payment of the depository bond could have been made to Johnson County because it was the payee. If the principal or either of the sureties had desired to pay the debt sued on, payment could have been made to the county. 9 C. J., 72 (122); Buhrer v. Baldwin, 100 N. W., 468; Menage v. Newcomb, 22 N. W., 182, and Surety Co. v. McCormick, 268 Fed., 185.

Johnson County not only had the right to maintain suit on the

bond for the debt sued on but the appellant was not a necessary party to the suit. Buhrer v. Baldwin, 100 N. W., 468 (1). There is no statute expressly authorizing the appellant to sue on the bond. In fact, the appellant is not one of the contracting parties. The principal and the sureties on the bond contracted with Johnson County through its County Judge. The contract, it is true, was partly for the benefit of the appellant, but the principal and sureties did not make any promises directly to the appellant, they were made to the county for the benefit of the appellant. In the absence of a statute authorizing suit on the bond by the appellant, the proper plaintiffs in such a suit would be the county because the contract was made with it. 18 C. J., 596 (88-89); Ill. Surety Co. v. U. S., 226 Fed., 665, 141 C. C. A., 421; Steed v. Henry, 180 S. W., 508 (Ark.); Moulton v. McLean, 39 Pac., 78 (Colo.); Warren v. Nix, 135 S. W., 896 (Ark.), Where the bond is payable to the custodian of the funds, a public board, the real party at interest, is not a necessary plaintiff. This is true although the board was a party to the depository contract. Buhrer v. Baldwin, 100 N. W., 468, 137 Mich., 263. To the same effect is Steed v. Henry, 180 S. W., 508, and Bank v. Harris, 170 S. W. (Ark.). When a statute provides that suits for the benefit of the State must be brought on the relation of the person authorized to sue, the defendant has the right to insist that the suit be brought and prosecuted by the person authorized by the statute. Commonwealth v. Helm, 173 S. W., 392.

MR. JUDGE NICKELS delivered the opinion of the Commission of Appeals, Section A.

The National Bank of Cleburne, Johnson County, Texas, was duly selected "County Depository" and qualified as such by execution, etc., of the required bond on April 14, 1921, all in accordance with the terms of Chap. 2, Title 47, R. S. 1925. The penal sum of the bond is $2,208,956, and it is signed by J. W. Floore, Jr., and others, as sureties. O. O. Chrisman, County Judge, is the nominal payee it was duly approved by the Commissioners Court and the Comptroller of Public Accounts and it is of statutory form.

During the years of 1921 and 1922 A. D. Griffin was the duly elected, qualified and acting Tax Collector for the county, and Floore was surety on his bond as such. This bond is in the penal sum of $65,352.47, Pat M. Neff, Governor, is named as payee, and the instrument is of the form required in Art. 7247, R. S. 1925.

All moneys representing taxes collected by Griffin were deposited by him with the depository bank as required by said Chap. 2, the credits therefor being made in an account styled "A. D. Griffin, Tax Collector." In this account moneys derived as State taxes, county taxes and various district taxes were credited in bulk and upon it Griffin checked in making his settlements with the State and county. The bank suspended on October 17, 1921, and its affairs were duly taken over and process of liquidation begun by the Comptroller of the Currency. On that date credits for "State Taxes" aggregating the sum of $9,261.51 were included in the account.

October 18, 1921, Floore was duly adjudged bankrupt in the District Court of the United States for the Northern District of Texas, and on October 14, 1922, he duly received discharge therein.

July 5, 1923, the State of Texas brought suit in the District Court of Johnson County against the principal and sureties on the depository bond and therein sought recovery for the $9,261.51 mentioned. Floore set up his discharge in bankruptcy as a release of liability on the bond. The manner in which the issue was raised is thus stated in the certificate:

"The appellee alleged in his first amended original answer that he was duly adjudged bankrupt * * * October 18, 1921, and was duly discharged October 14, 1922; that all the deposits in the account involved were made prior to October 17, 1921; and that the bond sued on was properly scheduled as a liability in the bankruptcy proceedings; that the case was still pending in the bankruptcy court, and that no distribution of the estate had been made among the creditors, and further alleged that the appellant had notice of the bankruptcy proceedings prior to the discharge through the following persons: The Tax Collector of Johnson County; Hon. Pat M. Neff, Governor; Johnson County, and O. O. Chrisman, the County Judge; J. R. Keith, County Attorney of Johnson County; Mr. Cliff Stone, Judge Tom L. Beauchamp and Wallace Hawkins, assistants to the Attorney General. The appellant in its supplemental petition denied the allegations in the appellee's amended answer."

The evidence shows that Johnson County, through its County Judge and commissioners, and Keith, Stone, Beauchamp and Griffin had knowledge of the bankruptcy proceedings long before the discharge; but as to whether or not the Attorney General, Hon. W. A. Keeling, and the Governor, Hon. Pat M. Neff, had such actual knowledge the record is silent, except for Floore's allegation and the State's general denial. It appears that the

bond sued on was thus scheduled by Floore in the bankruptcy proceedings:

"Schedule A. (5). Section 4. Accommodation Paper: Name of Creditor—Johnson County, Cleburne, Texas. The National Bank of Cleburne, Texas, was appointed official depository of Johnson County, Texas, in April, 1921, and executed a depository bond for $2,000,000 signed by J. W. Floore, Jr., J. T. Falkenbury, G. C. Smith, J. R. Nail, J. D. Goldsmith, J. T. Jordan, J. G. Beasley, J. C. Blakeney, S. B. Norwood, all of Cleburne, Texas, as sureties. No collateral."

The other bond (i. e. the Tax Collector's bond) was thus scheduled:

"Schedule A. (5). Accommodation Paper. Section —: Governor of the State of Texas, Hon. Pat M. Neff, Austin, Texas. November 25, 1920, J. W. Floore, Jr., executed, as surety, the bond of A. D. Griffin, Tax Collector of Johnson County, for $65,352.47, and payable to the Governor of the State of Texas."

The defense was sustained by the District Court, and the case, upon the State's appeal, is now pending in the Court of Civil Appeals, Second District.

That court has certified the following questions:

"1. Was the schedule of the bond in the bankruptcy proceedings sufficient to discharge the claim sued on?"

"3. Are the facts found by this court sufficient in law to show notice to the Governor of the bankruptcy proceedings?"

In a prima facie sense, the discharge in bankruptcy so operated as to release Floore from all provable debts existing prior to the adjudication. Kreitlein v. Ferger, 238 U. S., 27, 59 L. Ed., 1184. Floore's obligation upon the depository bond as well as upon the Tax Collector's bond was a provable debt. 1 Collier on Bankruptcy, 13th Ed., p. 609. That apparent result was absolute in its nature unless, (a) the debt was not duly scheduled, or, (b) the creditor did not have notice or actual knowledge of the bankruptcy proceedings if the debt was not duly scheduled. Section 17a (3) of the Bankrupt Act. The latter contingency amounts to an "exception to the exception" so that the bankrupt has the burden of showing notice or actual knowledge in the absence of due scheduling. Hill v. Smith, 260 U. S., 592, 67 L. Ed., 419.

We merely assume the debt, in so far as it is evidenced by the depository bond, was not duly scheduled, although we are inclined to the opposed view, for we believe the State had notice.

Bankruptcy proceedings have an *in rem* nature. Hanover

National Bank v. Moyses, 186 U. S., 181, 192, 46 L. Ed., 1113. Filing of the petition gives jurisdiction. 2 Collier on Bankruptcy, 13th Ed., p. 1193. Because of the *in rem* characteristic, regularity of the petition and schedules makes further notice to the creditor whose claim may be discharged non-essential to due process. Hanover National Bank v. Moyses, supra. The fact of a due scheduling of a debt, of itself, imparts to the creditor notice of the existence of the proceedings. Collier, Ibid. Such is the necessary import of Section 17a (3), for, according to its terms, notice or actual knowledge must be otherwise shown only when the debt has not been duly scheduled. If a debt has been duly scheduled, it would require perversion of the statute's language to say that the creditor must have further notice in order to be constructively apprised of the proceedings.

The State's funds which were in the bank at suspension were referred to twice in the schedules. Once in respect to Floore's suretyship for the depository and once in respect to his suretyship for the Tax Collector. The latter relationship, undoubtedly, was properly scheduled. The bond was payable to the Governor, as required by statute, and the Governor's residence is by law fixed at Austin, Texas. Hon. Pat M. Neff was the Governor. The creditor and the creditor's residence were thus named in the schedule, together with a brief yet essentially complete description of the statutory bond itself. The Governor, therefore, as the nominal payee and as the chief executive of the State had notice of the bankruptcy proceedings. The notice was acquired by him in his capacity of agent duly authorized and within his term of service the notice, therefore, was to the State itself. Irvine v. Grady, 85 Texas, 120, 19 S. W., 1028.

"Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty—means of knowledge with the duty of using them, are, in equity, equivalent to knowledge itself." Cordova v. Hood, 84 U. S. (17 Wall.), 1, 8. The State's officers were given notice of the bankruptcy proceedings, and thus put upon inquiry as to any and all of Floore's financial relations to the State in ample time for them to have investigated the matter and to have proved its claim, to engage in all proceedings subsequent to the adjudication and to have caused the State to participate in all possible dividends and distributions of the estate. Under the Bankrupt Act and under the constitutional and statutory provisions concerning their offices the duty to inquire existed and all essential means of knowledge were available.

Accordingly, we recommend that certified questions Nos. 1 and 3, each, be answered "Yes."

Other questions were certified, but in view of the answers recommended for Nos. 1 and 3, they are immaterial.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.

C. J. Cureton not sitting.

<div style="text-align:right">

Thos. B. Greenwood,
William Pierson,
Associate Justices.