BLANCHE, Judge.
Plaintiff, United States Fidelity and Guaranty Company, instituted this suit for declaratory judgment seeking an adjudication to the effect that a certain judgment rendered in favor of plaintiff and against defendant on March 31, 1967, and recorded as a judicial mortgage in the Mortgage Records of Tangipahoa Parish on April 12, 1967, was not discharged by defendant’s *218 adjudication in bankruptcy on November 1, 1967, and discharge in bankruptcy on January 22, 1968. Defendant answered claiming that the judgment was discharged in bankruptcy and prayed that the Clerk of Court of Tangipahoa Parish be ordered to cancel plaintiff’s judgment from the Mortgage Records. (Answer, paragraph 11) Judgment was rendered by the trial court declaring plaintiff’s judgment against defendant to have been discharged in bankruptcy and ordering the Clerk of Court of Tangipahoa Parish to cancel the judgment from the Mortgage Records of said parish. From this judgment plaintiff suspensively appealed. For the reasons set forth herein, we affirm that part of the judgment declaring plaintiff’s judgment to have been discharged in bankruptcy insofar as defendant’s personal liability is concerned but reverse that part of the judgment ordering the Clerk of Court of Tangipahoa Parish to erase the judicial mortgage inscription from the Mortgage Records of that parish.
Plaintiff-appellant contends that inasmuch as plaintiff’s records fail to reflect that plaintiff received notice of the bankruptcy proceedings, and inasmuch as defendant failed to see that notice was given to plaintiff’s local attorney, who was prosecuting the claim against defendant, and plaintiff’s local claims office, the discharge in bankruptcy obtained by defendant does not operate to discharge the judgment in favor of plaintiff against defendant.
The record shows that plaintiff was properly listed on defendant’s bankruptcy schedule as a creditor with plaintiff’s home office given as its address. (Record, p. 17-K) The record also contains a letter from the Referee in Bankruptcy confirming that notice was mailed to plaintiff as creditor of the bankrupt using the home office address and that such notice was never returned to the Court of Bankruptcy in New Orleans, Louisiana. (Record, p. 17-0)
Plaintiff’s contention in this regard is without merit. It is clear that the failure of the creditor duly listed by the bankrupt to be served with notice of the bankruptcy does not prevent discharge of the scheduled debt; inasmuch as it is the duty of the Referee in Bankruptcy to notify creditors, the failure of the creditors to receive such notice cannot be charged to the bankrupt :
“With regard to the first contention [that the creditor received no official notice of the bankruptcy proceedings], the required notice to creditors listed by the bankrupt must be given by the Referee, Bankruptcy Statute, 11 U.S.C.A. §§ 94(c), 67(a) (1). If a duly listed creditor fails to receive notice of the bankruptcy, the failure cannot be charged to the discharged bankrupt; and the failure of the creditor to be served with notice does not prevent the discharge of the debt. 8B C.J.S. Bankruptcy § 577(1), p. 78 and the cases cited therein.” (U. Koen and Company v. Accardo, 188 So.2d 99, 100 [La.App. 4th Cir. 1966]).
In Tamborella v. Robison, 245 So.2d 476 (La.App. 2nd Cir. 1971), the Second Circuit Court of Appeal was recently presented with a similar contention that the attorney for the bankrupt knew who was the attorney representing the creditor, and the attorney for the bankrupt should have sent notice to the creditor’s attorney. This contention was rejected on the basis that the Bankruptcy Act charges the Referee with giving notice to the creditors and the failure of a duly scheduled creditor to receive notice of the bankruptcy cannot be charged to the discharged bankrupt, citing U. Koen and Company v. Accardo, supra.
The proper scheduling of plaintiff as a creditor of the defendant in her bankruptcy proceedings and the giving of plaintiff’s proper home office address certainly satisfied the requirements of the Bankruptcy Act, and the alleged failure of plaintiff to receive notice of the bankruptcy proceedings cannot be imputed to the defendant so as to bar the effect of her discharge in bankruptcy insofar as her personal liability to plaintiff is concerned.
*219 Plaintiff-appellant further contends that the trial court erred in ordering the Clerk of Court for the Parish of Tan-gipahoa to cancel the judicial mortgage inscription from the Mortgage Records of that parish. Defendant contends that the trial court properly ordered such cancellation of the judicial mortgage inscription for the reason that the property allegedly covered by the judicial mortgage was exempt under the Louisiana homestead exemption[1] and was disclaimed by the Trustee in Bankruptcy in favor of defendant as exempt property.
It is clear that while a discharge in bankruptcy has the effect of discharging a bankrupt from personal liability, it does not destroy a judicial mortgage on immovable property owned by the bankrupt and arising more than four months prior to the bankrupt’s adjudication in bankruptcy, even though the property may have been set apart or disclaimed by the Trustee in Bankruptcy as a homestead for the bankrupt, Schexnailder v. Fontenot, 147 La. 467, 85 So. 207 (1920); Henry v. Roque, 18 So.2d 917 (La.App. 2nd Cir. 1944); Jaubert Brothers, Inc. v. Landry, 15 So.2d 158 (La.App. 1st Cir. 1943).
Defendant argues, however, that the last cited case is authority for the proposition that the judicial mortgage can be cancelled when the property disclaimed by the Trustee in Bankruptcy in favor of the bankrupt constitutes a homestead exemption, relying on the italicized portion of the opinion in Jaubert Brothers, Inc. v. Landry, reproduced below:
“The defense most strenuously urged by the defendant against the revival of the judgment is that he had no equity in the homestead set apart as exempt and therefore there is nothing against which the judicial mortgage can operate; that he owes on the property practically all the purchase price, and the payments which he will be required to make to pay the purchase price will come out of his future earnings and cannot be subjected to the payment of the judgment, as these earnings, under the law and the terms of the judgment, cannot be applied to the liquidation of an old debt from which he was personally discharged by the bankruptcy proceeding.
“This argument presents an equitable reason for opposing the revival of the judgment to operate as a judicial mortgage against property which the defendant will pay for out of funds earned by him after his discharge in bankruptcy, however, that does not affect the legal right of the judgment creditor to have its judgment revived and kept in force as a judicial mortgage. This mortgage can operate only against this exempt homestead according to the terms of the judgment. If at the time of the adjudication in bankruptcy, this homestead was worth considerably more than the balance of the purchase price, this excess would be property owned by the defendant at the time of the adjudication and subject to the mortgage resulting from the recordation of the judgment, and the property could be released from the judicial mortgage by the payment or tender of this excess in value. If, on the contrary, the defendant had shown in this proceeding, or can show in an appropriate proceeding taken against the judgment creditor, that at the time of the adjudication the property set apart to him *220 as a homestead was worth no more than the balance due on the purchase price, he could have the homestead declared free from the judicial mortgage resulting from the recordation of the judgment. And in case the homestead should ever become subject to execution under the judgment, the defendant can protect himself by claiming out of the proceeds of the sale of the property all amounts which he paid thereon out of funds earned by him after his adjudication in bankruptcy.” (Jaubert Brothers, Inc. v. Landry, 15 So.2d at 161 — Emphasis supplied by this Court)
Our review of the record herein reflects that defendant has failed to carry the burden of proof which would be incumbent upon her to have the Court judicially declare her entitlement to the alleged homestead exemption or the value of defendant’s property at the time of her adjudication in bankruptcy. While the record does contain a copy of the act of sale whereby defendant initially acquired ten acres of land on October 27, 1952, for a recited consideration of $500 (Plaintiff Exhibit No. 3, Record, pp. 17-E, 17-F), the record also shows that improvements were subsequently erected on the property (Record, p. 47). The mere fact that the property was disclaimed by the Trustee in Bankruptcy in favor of the bankrupt does not operate to deprive the judgment creditor of in rem rights resulting from the judicial mortgage, Jaubert Brothers, Inc. v. Landry, cited supra, nor is the value placed on the alleged exempt property in the bankruptcy proceedings conclusive.
Moreover, the inscription of the judicial mortgage itself should not have been ordered cancelled from the Mortgage Records; the inscription of the judicial mortgage stays on the Mortgage Records, although the judicial mortgage itself may not encumber property which the bankrupt proves is exempt entirely as a homestead with value equal to or less than $4,000, Louisiana Constitution Article 11, Section 1; Jaubert Brothers, Inc. v. Landry, cited supra, or property acquired by the bankrupt subsequent to his discharge, Huff v. Justice, 174 So.2d 164 (La.App. 4th Cir. 1965).
For the foregoing reasons, the judgment appealed from is reversed insofar as it ordered the Clerk of Court for the Parish of Tangipahoa to cancel the judgment recorded in Mortgage Book 198, page 604, from the Mortgage Records of Tangipahoa Parish, Louisiana, and is affirmed in all other respects. The costs of this appeal are assessed one half to plaintiff-appellant and one half to defendant-appellee.
Reversed in part, affirmed in part and rendered.

. The Louisiana Constitution in Article 11, Section 1, provides a $4,000 homestead exemption to certain specified persons and under certain specified conditions. The pertinent part of this constitutional provision reads as follows :
“ * * * There shall be exempt from seizure and sale by any process whatever, except as hereinafter provided, the homestead, bona fide, owned by the debtor and occupied by him, consisting of lands, not exceeding one hundred and sixty (160) acres, buildings and appurtenances, whether rural or urban, of every head of a family, or person having a mother or father or a person or persons dependent on him or her for support; * * * to the total value of not more than Four Thousand Dollars ($4,000.00).”